**IN THE UNITED STATES
BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF
PENNSYLVANIA**

| | |
|---|---|
| **In Re:** | **Bankruptcy No. 24-20318-GLT** |
| **Magna Service Agency, Inc.** | |
| **Debtor(s)** | **Chapter 11** |
| | **Document No.** |

SMALL BUSINESS DEBTOR'S CHAPATER 11 PLAN OF REORGANIZATION DATED AS OF MAY 9, 2024

This Plan of Reorganization dated as of May 9, 2024, (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debt of Magna Service Agency, Inc., and to seek your vote to accept the Plan.

You are encouraged to carefully review the Plan in full, including all exhibits, schedules and attachments, before deciding how to vote on the Plan. A list of definitions appears at the end of the this document to assist you in your review.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DATE AND TIME INDICATED ON THE SCHEDULING ORDER BEING SERVED WITH THIS PLAN.

YOUR BALLOT STATING HOW YOU ARE VOITING ON THE PLAN MUST BE RETURNED BY THE DATE AND TIME INDICATED ON THE SCHEDULING ORDER BEING SERVED WITH THIS PLAN. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: BONONI & COMPANY, P.C., 20 NORTH PENNSYLVANIA AVENUE, GREENSBURG, PA 15601.

PLEASE BE ADVISED THAT IN THE EVENT THAT ANY CREDITOR, EQUITY SECURITY HOLDER, OR OTHER PARTY IN INTEREST THAT IS ENTITLED TO VOTE ON THIS PLAN FAILS TO REMIT A TIMELY BALLOT, THAT CREDITOR, EQUITY SECURITY HOLDER, OR OTHER PARTY IN INTEREST SHALL BE DEEMED TO HAVE ACCEPTED THE PLAN AND VOTED IN FAVOR OF PLAN CONFIRMATION.

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR THE DATE AND TIME INDICATED ON THE SCHEDULING ORDER BEING SERVED WITH THIS PLAN BEFORE JUDGE GREGORY L. TADDONIO IN COURTROOM D, 54TH FLOOR, US

STEEL TOWER, 600 GRANT STREET, PITTSBURGH, PA 15219

YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN, YOU SHOULD CONSIDER
DISCUSSING THIS DOCUMENT WITH AN ATTORNEY

**DATED:** <u>May 9, 2024</u>                  <u>**s/ Corey J. Sacca**</u>
                                        **Corey J. Sacca, Esquire**
                                        **PA ID 306741**
                                        **Bononi & Company, P.C.**
                                        **20 North Pennsylvania Ave.**
                                        **Greensburg, PA 15601**
                                        **724-832-2499**
                                        **csacca@bononilaw.com**

**IN THE UNITED STATES
BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF
PENNSYLVANIA**

| | |
|---|---|
| **In Re:** | **Bankruptcy No. 24-20318-GLT** |
| **Magna Service Agency, Inc.** | |
| **Debtor(s)** | **Chapter 11** |
| | **Document No.** |

---

**SMALL BUSINESS DEBTOR'S CHAPTER 11 PLAN OF
REORGANIZATION DATED  MAY 9, 2024**

---

**DATED:** May 9, 2024          **s/ Corey J. Sacca_____**
**Corey J. Sacca, Esquire**
**PA ID 306741**
**Bononi & Company, P.C.**
**20 North Pennsylvania Ave.**
**Greensburg, PA 15601**
**724-832-2499**
**csacca@bononilaw.com**

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This concise summary of the Plan, consistent with *Local Rule 3016-2*, describes with particularity the treatment of each class of Creditors and the source of funding for the Plan.

The Plan proposes to pay the Debtor's creditors from, for example, cash flow from operations, sale of assets, infusion of capital, loan proceeds:

The Plan provides for the following classes of claims and interests for priority claims, secured claims, general unsecured claims, and equity interests:

| Class # | Class Description | Impaired or Unimpaired | Plan Section |
|---|---|---|---|
| 1 | Secured Creditors | Impaired | 2.2.1 |
| 2 | Priority Tax Claims | Impaired | 2.1.2 |
| 3 | General Unsecured Claims | Impaired | 2.2.3 |
| 4 | Equity Security Holders | Impaired | 2.2.4 |
| 5 | Administrative Claims | Unimpaired | 2.1.1 |

The Plan proposes to pay administrative and priority claims in full unless otherwise agreed. The Debtor estimates approximately 5% will be paid on account of general unsecured claims pursuant to the Plan.  The Plan term is sixty (60) months.

The specific treatment of the classes of claims and interest are set forth in Article 2 of the Plan.

Only holders of Allowed Claims in a class identified as impaired may vote on whether to accept or reject the Plan.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

## ARTICLE 1
## DISCLOSURES REGARDING THE DEBTOR(S) AND THE BANKRUPTCY CASE

### 1.1    Describe Nature of the Debtor's Business

The Debtor is a Pennsylvania Corporation and operates a road/interstate piloting service for the oil/gas industry.  Primarily for the fracking of Marcellus Shale by its customers.

### 1.2.    Describe History of Debtor's Business Operations

The Debtor was created in 2008, and named Magna Security Agency, with the focus on providing security services to identified needs.   In 2011, the company name changed to Magna Service Industry when an opportunity was created in the oil and gas industry to provide traffic control and security to one customer.
In 2015 the service deliverable expanded to over the road/interstate pilot services. That included developing action plans, route surveys, obtaining permits, qualifying loads and timing of the moves based on regulations.

**1.3.    Describe Prepetition Legal Structure and Ownership**

The Debtor is a Pennsylvania Business Corporation organized under the laws of Pennsylvania.  Debtor's sole shareholder is KHB Holdings, LLC.

**1.4.    Describe All Debtor's Assets**

| Asset | Reorganization Value | Liquidation Value | Liens Encumbering the Asset | Value of Any Claimed Exemption[1] | Value of the Estate's Interest in the Asset[2] |
|---|---|---|---|---|---|
| Wesbanco Checking Acct. Act. No. 2747 | $2,236.74 | $2,236.74 | First National Bank, Huntingdon National Bank, and Commercial Credit Group | NA | $0.00 |
| Wesbanco Checking Acct. Act. No. 2747 | $129,945.72 | $129,945.72 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
| First National Bank Checking Act. | $1,000.00 | $1,000.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
| BBL Equity from Leased Vehicles | $17,856.00 | $17,856.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |

[1] State "N/A" if not applicable
[2] Calculated by subtracting from the Liquidation Value the amount of liens encumbering the asset and the value of any claimed exemption.  *See* Definition of Value of Estate's Interest in Article 7.

| Accounts Receivable | $669,375.44 | $669,375.44 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
|---|---|---|---|---|---|
| Office Furniture | $7,500.00 | $3,750.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
| Office Equipment | $2,000.00 | $2,000.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
| Various Office Items | $2,000.00 | $2,000.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |
| Flagging and Traffic Control Equipment | $7,500.00 | $5,000.00 | First National Bank, Huntington National Bank, Commercial Credit Group | NA | $0.00 |

**1.5    Identify any assumptions made concerning the Asset's value particularly to the extent the    value of the asset is different from what was scheduled as of the Petition Date**

The following assumptions are made for the Liquidation Value:

The Estate would recover 100% of all cash accounts.  All of the cash accounts and receivables are secured by liens, therefore a hypothetical chapter 7 would yield no payment to unsecured creditors.

- The Estate could recover all funds in the checking accounts.
- The Estate could reasonably recover the Accounts Receivable.

The Estate would receive 0% for the sale of business equipment as it is fully encumbered.  The Debtor does not have significant physical assets.

- The value of the personal property may vary from the value listed on the Petition based on the current market and the cost to remove the items by any potential bidder/buyer.

- The Debtor reasserts that these are assumptions made in a

hypothetical chapter 7 case. In a hypothetical chapter 7, these assets may be liquidated for less than what is listed.

The Debtor does not own any real estate or motor vehicles for liquidation.

## 1.6.    Identify Debtor's Liabilities

The table below discloses the Debtor's liabilities by aggregating the total amount of claims in each class under the Plan.  For a breakdown of specific claim amounts *see* Article 2, Sections 2.1 and 2.2.

| Class # | Description of Liability by Class[3] | Total Amount of Claims in the Class | Disputed (D) Unliquidated (U) Contingent (C) |
|---------|--------------------------------------|-------------------------------------|----------------------------------------------|
| 1 | Secured Creditors | $3,186,080.60 | |
| 2 | Priority Tax Claims | $3,544,515.51 | Disputed |
| 3 | General Unsecured Claims | $1,171,652.00 | Disputed |
| 4 | Equity Security Holders | N/A | |
| 5 | Administrative Claims | $29,000.00 | |
| TOTAL: | | $1,246,193.60 | |

## 1.7.    Current and Historical Financial Conditions

The Debtor's relevant financial data, including the Debtor's current and 12-month historical financial performance, is summarized, below.  Consistent with current practice and so there is no ambiguity as to duration of the historical performance, a 12-month history should be included.

Historical Performance (gross total):

- March 2023 - $939,806.36
- April 2023 - $1,256,670.92
- May 2023 - $815,720.15
- June 2023 - $1,088,274.04
- July 2023 - $716,585.39
- August 2023 - $604,491.35
- September 2023 – $794,491.84
- October 2023 – $401,491.84
- November 2023 - $70,864.96

---

[3] *Describe the liability by reference to its classification (e.g.  Administrative Claim, Priority Tax Claim, Secured Claim (All Assets), Secured Claim (Specific Asset(s)), Priority Unsecured Claim, General Unsecured Claim).*

- December 2023 – $196,253.68
- January 2023 – 743,550.72
- February 2023 – 688,367.52

Information concerning the Debtor's postpetition financial performance is found in the monthly operating reports filed of public record by the Debtor with the Bankruptcy Court.

The Debtor's financial projections providing information on the Debtor's ability to fund its obligations under this Plan are found in Article 3 and Schedules 3.1 and 3.2 of this Plan.

**1.8.    Events Leading to the Filing of the Bankruptcy Case**

On the Petition Date, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the US Bankruptcy Court for the Western District of Pennsylvania.

Describe how the Debtor has cured the problems that lead to the filing for its successful rehabilitation.

Debtor was obligated to weekly and monthly merchant cash advance loans.  The payment of the merchant cash advance loan payment did not allow for sufficient cash flow for the continued operation of the business.

Debtor fell behind in its required tax filing and remittances.

A slowing of the oil and gas industry in November and December of 2023 led to a decreased cashflow for the Debtor.

Debtor believes it is current with its post-petition tax filing and remittances.  Debtor has sufficient income to confirm the within plan.

**1.9.    Significant Events During the Bankruptcy Case, which may Include:**

**1.9.1**    Any asset sales outside the ordinary course of business, debtor-in- possession financing, or cash collateral orders:
Sale of Assets – The Debtor does not have unencumbered assets to sell.  All revenue and income will be generated by the continued operation of the business

**1.9.2**    The identity of professionals approved by the Bankruptcy Court:
Counsel – On March 6, 2024, the Debtor filed a Motion to Employ Corey J. Sacca, Esquire and Bononi & Company, P.C. as Counsel for the Debtor. Doc. No. 55. On April 9, 2024, the Motion was granted by default. Doc. No. 73.

The Debtor may move to employ an accountant once Debtor obtains

an accountant to perform ongoing tax preparation and accounting services.

The Debtor may move to employ special counsel for any legal matters outside the scope of its bankruptcy counsel's representation.

<u>Trustee</u> – On February 12, 2024 an Order was entered at Doc. No. 15 appoint William G. Krieger, Trustee.

**1.9.3** Any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Bankruptcy Court:

As of the filing of this Plan, no adversary proceedings have been filed. It is anticipated that actions to determine the secured status of the following creditors may be necessary if consensual plan treatment is not reached:
- The Fundworks, LLC
- Commonwealth of PA, Department of Labor and Industry
- FIRST Insurance Funding
- Regions Bank d/b/a Ascentium Capital
- The Huntington National Bank

**1.9.4** Any steps taken to improve operations and profitability of the Debtor:
The Debtor has focused on attracting new customers aside from its primary two customers. Debtor has been able to continue to provide its reliable services to its existing customers.

**1.9.5** Other events as appropriate:
**N/A**

## 1.10.  <u>Projected Avoidance Actions</u>

The Debtor does not intend to pursue preference, fraudulent conveyance, or other Avoidance Actions as it does not appear from its review that any potential actions would net any benefit to this Bankruptcy Estate or the creditors of this Bankruptcy Estate.

## 1.11.  <u>Describe Other Potential Litigation</u>

Debtor intends to file adversary proceedings to determine the secured status of the debts as outlined in Section 1.9.3.

## ARTICLE 2

## THE PLAN

**2.1**    **Treatment of Unclassified Claims**

**2.1.1    Administrative Claims**

Each Allowed Administrative Claim shall be paid as follows: (a) in full on the Effective Date, or (b) in such amounts and on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor, or (c) as ordered by the Court.

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | None | Payment through the Plan as follows: This claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |
| Administrative Tax Claims | $0.00 | Payment through the Plan as follows: Payments will be made monthly over the plan term. The claims shall accrue interest at a rate of 6% per annum. Payments to begin on the Effective Date of the Plan. |

| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | Payment through the Plan as follows: Payment through the Plan as follows: This claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Claim holder. |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | $25,000.00 | After Bankruptcy Court approval, Payment through the Plan as follows: After Bankruptcy Court approval, Payment through the Plan as follows: The administrative claims will be paid on confirmation **or** as the parties agree over the term of the plan. |
| Clerk's Office fees | None | Paid in full on the Effective Date. |
| Other Administrative Expenses | Any postpetition amounts which may be due under executory contracts or leases | Payment through the Plan as follows: After Bankruptcy Court approval, The administrative claims will be paid on confirmation **or** as the parties agree over the term of the plan. |
| Trustee | $4,000.00 | Upon application under §330 and after Bankruptcy Court approval, this claim will either (i) be paid in full on or before the Effective Date of the Plan **or** (ii) in such amounts and on such other terms agreed on between the Debtor and this Trustee. |
| TOTAL | $29,000.00 | |

### 2.1.2   Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code.  Unless the holder of such a §507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the Petition Date.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Taxing Authority | Tax Type | Claim Amount | Plan Treatment |
|---|---|---|---|
| Commonwealth of PA Department of Labor and Industry | Unemployment Compensation | $365,590.38 | Payment through the Plan as follows: Payments will be made monthly over the plan term.  The claims shall accrue interest at a rate of 3% per annum.  Payments to begin on the Effective Date of the Plan. |
| Internal Revenue Service | Employer Withholding | $3,274,941.00 | Payment through the Plan as follows: Payments will be made monthly over the plan term.  The claims shall accrue interest at a rate of 3% per annum.  Payments to begin on the Effective Date of the Plan. |
| Ohio Department of Taxation | Employer Withholding Assessment | $3940.72 | Payment through the Plan as follows: Payments will be made monthly over the plan term.  The claims shall accrue interest at a rate of 3% per annum.  Payments to begin on the Effective Date of the Plan. |
| Southwest Tax Collection District | Employer Withholding | $182.133.01 | Payment through the Plan as follows: Payments will be made monthly over the plan term.  The claims shall accrue interest at a rate of 3% per annum.  Payments to begin on the Effective Date of the Plan. |

**2.2**    **Classification and Treatment of Claims and Equity Interests**

**2.2.1    Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to §1190(3) of the Code as set forth below, if applicable.

The following table lists the classes of the Debtor's Secured Claims and their proposed treatment under the Plan:

| Class # | Description | Disputed? (Y/N) | Impaired / Unimpaired | Treatment |
|---|---|---|---|---|
| 1 | First National Bank of Pennsylvania | N | Unimpaired | First National Bank of Pennsylvania (FNB) Filed a claim in the amount of $368,866.93 at Proof of Claim No. 4-1.  FNB shall be paid pursuant to the contract terms at $4,216.00 per month which is the full value of their claim. |
| 1 | The Huntington National Bank | N | Impaired | The Huntington National Bank (HNB) Filed claims in the amount of $3,186,080.61 at Proof of Claim No. 20-1, 21-1, 22-1, 23-1, 24-1. HNB shall be paid $464,296.97 as the secured portion of their claim, which is the full value of their claim based on the collateral The monthly |

| | | | | payment to HNB shall be $9,525.76 |
|---|---|---|---|---|
| | | | | |

**a)** All class 1 creditors listed above are uniformly being paid the full value of their secured claim as of the petition date.

**b)** FNB shall continue to receive its contract rate of interest. HNB shall receive 8.5% interest amortized over a period of 60 months with the first payment being due on or before the last day of the month in the month following the effective date of the Plan with subsequent payments due on or before the last day of every month thereafter until the secured portion of the claim is paid in full pursuant to the terms contained in this plan.

**c)** Any unsecured claim of a Class 1 Creditor shall be treated as a general unsecured debt and paid the same rate as all other allowed general unsecured creditors in Plan Section 2.2.3.

**d)** Upon completion of all payments to Class 1 creditors as called for in this Plan, the creditor shall satisfy, remove and or extinguish any liens against he assets of the Debtor supported by a UCC filing with the Commonwealth of Pennsylvania and/or shall release any titles and/or equipment held. The creditor shall file said satisfaction with the appropriate state office or release any title and/or lien on title being held within 30 days of tender of final payment.

### 2.2.2   Priority Unsecured Claims

Certain priority Claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following table lists the classes of Debtor's Priority Unsecured Claims and their proposed treatment under the Plan:

| Class # | Description of Claim | Impaired/ Unimpaired | Treatment |
|---|---|---|---|
| N/A | §507(a)(1) Claims<br><br>Total Amount: $_____ | | |

| N/A | §507(a)(4) Claims<br><br>Total Amount: $_____ | | |
|-----|-----|-----|-----|
| N/A | §507(a)(5) Claims<br><br>Total Amount: $_____ | | |
| N/A | §507(a)(6) Claims<br><br>Total Amount: $_____ | | |
| N/A | §507(a)(7) Claims<br><br>Total Amount: $_____ | | |

### 2.2.3   General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

Insert description of §1122(b) convenience class if applicable:

The following table lists the classes of the Debtor's General unsecured Claims and their proposed treatment under the Plan: Payment to be made annually.  Each creditor to receive 1% of allowed claim amount prior to December 31, 2025 and each subsequent year by December 31st through December 31, 2029.  The Debtor intends to commit its disposable income to the payment of the general unsecured creditors.  The minimum total distribution under this Plan is 5%.  This percentage will be increased if Debtor's disposable income is greater than estimated under this Plan.

| Class # | Description | Impaired / Unimpaired | Treatment |
|---------|-------------|----------------------|-----------|
| 4 | The Fundworks, LLC - Claim 2 | Impaired | See above description 2.2.3 |
| 4 | Ohio Department of Taxation - Claim 3 | Impaired | See above description 2.2.3 |
| 4 | NorthStone Insurance Company Claim - 6 | Impaired | See above description 2.2.3 |
| 4 | UKG, Inc. Claim -7 | Impaired | See above description 2.2.3 |
| 4 | The Holden Corp. Claim-8 | Impaired | See above description 2.2.3 |
| 4 | FIRST Insurance Funding Claim 9 | Impaired | See above description 2.2.3 |
| 4 | West Penn Power Claim - 10 | Impaired | See above |

| | | | description 2.2.3 |
|---|---|---|---|
| 4 | American Express National Bank Claim - 11 | Impaired | See above description 2.2.3 |
| 4 | Southpointe Land, LP Claim -12 | Impaired | See above description 2.2.3 |
| 4 | Highmark, Inc. Claim - 13 | Impaired | See above description 2.2.3 |
| 4 | Commercial Credit Group, Inc. Claim 15 | Impaired | See above description 2.2.3 |
| 4 | RegionsBank d/b/a Ascentium Capital  - Claim 16 | Impaired | See above description 2.2.3 |
| 4 | RegionsBank d/b/a Ascentium Capital  - Claim 17 | Impaired | See above description 2.2.3 |
| 4 | RegionsBank d/b/a Ascentium Capital  - Claim 18 | Impaired | See above description 2.2.3 |
| 4 | Rapid Capital Claim - 19 | Impaired | See above description 2.2.3 |
| 4 | The Huntington National Bank Claims 20-24 | Impaired | See above description 2.2.3 |
| 4 | Merchants Automotive Group, Inc. Claim 25 | Impaired | See above description 2.2.3 |
| 4 | Forward Financing Claim 26 | Impaired | See above description 2.2.3 |
| 4 | Department of Treasury – Internal Revenue Service Claim – 27 | Impaired | See above description 2.2.3 |
| 4 | Barrier Protection Services | Impaired | See above description 2.2.3 |
| 4 | Advanticom | Impaired | See above description 2.2.3 |
| 4 | AT&T Wireless | Impaired | See above description 2.2.3 |
| 4 | Chase | Impaired | See above description 2.2.3 |
| 4 | Cedar Advance | Impaired | See above description 2.2.3 |
| 4 | Express 4 x4 | Impaired | See above |

| | | | description 2.2.3 |
|---|---|---|---|
| 4 | GPS Insight | Impaired | See above description 2.2.3 |
| 4 | Glass Guy | Impaired | See above description 2.2.3 |
| 4 | Lamar Advertising | Impaired | See above description 2.2.3 |
| 4 | Mr. John | Impaired | See above description 2.2.3 |
| 4 | L-Star Holdings, LLC | Impaired | See above description 2.2.3 |
| 4 | Metz Lewis Brodman Must O'Keefe | Impaired | See above description 2.2.3 |
| 4 | Quadient | Impaired | See above description 2.2.3 |
| 4 | Obermayer Rebman Maxwell & Hipp | Impaired | See above description 2.2.3 |
| 4 | Union Leasing | Impaired | See above description 2.2.3 |
| 4 | Pinnacle Business Funding | Impaired | See above description 2.2.3 |

### 2.2.4   Equity Interest Holders

The following table lists the classes of Equity Interests and their proposed treatment under the Plan:

| Class # | Description | Impaired / Unimpaired | Treatment |
|---|---|---|---|
| 5 | KHB Holdings, LLC | Unimpaired | Retain – 100% |

## 2.3   Claims Objections

Except for claims treated as Allowed or Non-Impaired pursuant to the Plan, the Debtor may object to the amount or validity of any claim within forty-five (45) days following entry of the Post-Confirmation Order  (unless otherwise modified or extended by Court Order) by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  No payment will be

made to a holder of a Disputed Claim unless and until it becomes an Allowed Claim. To the extent the Disputed Claim becomes an Allowed Claim, the Debtor will pay the Allowed Claim in accordance with the Plan.

**2.4**      **Treatment of Executory Contracts and Unexpired Leases**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The defined term "Executory Contract" as used in this Plan includes unexpired leases.

The Executory Contracts to be assumed by the Debtor and performed by the Debtor after confirmation are set forth on **Schedule 2.4(a)** attached hereto. Schedule 2.4(a) provides the name of the counterparty to the Executory Contract, a brief description of the contract, and the proposed cure amount.

The Executory Contracts to be assumed by the Debtor and assigned to a third party are set forth on **Schedule 2.4(b)** attached hereto. Schedule 2.4(b) provides the name of the counterparty to the Executory Contract, a brief description of the contract, the name of the proposed assignee and the proposed cure amount.

If the proposed assignee is an Insider describe the relationship here: N/A

Unless a Bankruptcy Court Order states otherwise, objections to the assumption of an Executory Contract, the proposed cure amount, or the adequacy of assurance of future performance, must be filed and served on or before the deadline for filing Plan objections.

All Executory Contracts not listed on Schedule 2.4(a) or 2.4(b) shall be deemed rejected upon entry of the Confirmation Order and the Debtor will no longer continue to perform its obligations under the Executory Contract. For the convenience of creditors, the Debtor has prepared the attached **Schedule 2.4(c)** listing Executory Contracts to be rejected upon entry of the Confirmation Order. For the avoidance of doubt, however, any Executory Contract not listed on either Schedule 2.4(a) or 2.4(b) will be conclusively deemed rejected even if not expressly shown on Schedule 2.4(c).

The deadline for filing a proof of claim arising from rejection of an Executory Contract shall be [30] days following entry earlier of: (a) the Confirmation Order; or (b) any Order of Court specifically providing for the rejection of the applicable Executory Contract. Any Claim based on the rejection of an Executory Contract that is not timely filed shall be a Disputed Claim.

**2.5**      **Means for Implementation of the Plan and Plan Funding**

**2.5.1**    Describe how the Plan will be implemented, including how the Plan will be funded.

The Debtor will implement and fund the plan from its continued operation as a piloting and safety company.

**2.5.2**    If the Plan proposes a sale of the Debtor's assets, describe how the sale will proceed, including anticipated marketing efforts and proposed bidding procedures.

   N/A

**2.5.3**    Describe any postpetition or exit financing the Debtor has or will obtain to fund the Plan

   N/A

**2.5.4**    Describe Additional provisions, if any, for implementing the plan, including provisions necessary to comply with §1191(c)(3)(B).

   The Debtor will be able to make all payments under the plan and/or there is a reasonable likelihood that the Debtor will make all payments under the plan and the Plan provides appropriate remedies to creditors.

## 2.6    <u>Payments</u>

The Debtor shall make Plan payments unless the Plan is confirmed under §1191(a), whereupon payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a), (to the extent of    any payments and funds received by the Trustee prior to confirmation). [Once the Trustee's service is terminated under §1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under  §1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

Payments made pursuant to the Plan that are unclaimed after six (6) months shall be treated as unclaimed funds and shall include checks and funds represented by the checks which have been returned as undeliverable without a proper forwarding address.  Provided that the Plan distribution was sent to the claimant's last known address on the claims register, unclaimed funds shall constitute an abandonment of the claim and become the property of the Debtor or the entity acquiring the assets of the Debtor under the Plan (as applicable).

## 2.7    <u>Termination of Trustee Services</u>

If the Plan is confirmed under §1191(a), the service of the Trustee shall terminate when the Plan has been substantially consummated (within the meaning of, and except as otherwise provided in §1183(c)(1)).  If the payments contemplated by the Plan are made, the Debtor believes substantial consummation of the Plan will occur on Effective Date of the Plan.  Not later than 14 days after substantial consummation, the Debtor will file and serve, in accordance with §1183(c)(2), a notice that the Plan is substantially consummated.

## 2.8    <u>Post-Confirmation Management</u>

The Debtor's management immediately prior to the Effective Date shall serve as the Debtor's management on and after the Effective Date. Upon entry of the Confirmation Order, officers of the Debtor, and their compensation, shall be as follows:

| Name | Posi | Compensation |
|---|---|---|
| Kathleen Bowman | President | $40,000.00 (annual) |
| | | |
| | | |

## 2.9    Tax Consequences of the Plan

***The Debtor makes no representation regarding the tax consequences of the Plan to any Creditor or Equity Interest Holder. Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.***

# ARTICLE 3

# FEASIBILITY OF PLAN

## 3.1    Ability to Initially Fund Plan

The Debtor's financial projections demonstrate sufficient cash on hand to satisfy obligations due on the Effective Date of the Plan, including payment of the Allowed Administrative Claims, U.S. Trustee Fees, and cure amounts, in accordance with the Bankruptcy Code or as otherwise agreed. *See* Schedule 3.1 attached hereto.

## 3.2    Ability to Make Future Plan Payments And Operate Without Further Reorganization

Pursuant to §1190(2) of the Bankruptcy Code, the Debtor shall submit all or such portion of future income as is necessary for the confirmation of the Plan and to satisfy the Debtor's obligations under Article 2 of the Plan.

Attached hereto as **Schedule 3.2**, are the Debtor's financial projections demonstrating the Debtor's ability to make all future Plan payments in the aggregate amount of $4,950,000.00 during the Plan term (the "Plan Funding"). Plan Funding is in an amount equal to the Debtor's disposable income as defined in §1191(d) of the Bankruptcy Code.

Summarize the numerical projections, and highlight/explain why any assumptions not in accord with past experience should now be made:

Cash flow from operations in Fiscal Year One was calculated using a monthly gross

revenue amount of $559,636.00.  This is consistent with the filed Monthly Operating Reports of the Debtor.  All expenses have been calculated using the historical data and amounts as listed in the Monthly Operating Reports filed in this proceeding.  Debtor has estimated its annual expenditures based on its known expenditures after renegotiation with the creditors.  Debtor does not see significant increases in expenses other than normal inflationary pressures.  Debtor believes that its income would naturally increase at this same rate of inflation so yearly increase have not been listed in this section.

The final Plan payment is expected to be paid on December 31, 2029.

**You Should Consult with Your Accountant or other Financial Advisor**
**If You Have Any Questions Pertaining to the Debtor's Financial Projections.**

**ARTICLE 4**

**LIQUIDATION ANALYSIS**

**4.1      Comparison of Plan with Chapter 7 Liquidation**

In order to confirm the Plan, the Bankruptcy Court must find that holders of Allowed Claims and Equity Interests who do not accept the Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation of the Debtor's assets (the "Liquidation Test").

If the Debtor's proposed Plan is not confirmed, the potential alternatives would include dismissal of the case or conversion of the case to Chapter 7.  If this case is converted to Chapter 7, a Chapter 7 Trustee will be appointed to liquidate all the Debtor's non-exempt assets.  In this event, all Secured Claims (to the value of the collateral) all Priority Unsecured Claims and all Administrative Claims (both Chapter 7 and Chapter 11) must be paid in full before any distribution is made to holders of General Unsecured Claims.

**4.2      Liquidation Analysis**

Based upon the liquidation value of the Debtor's assets in Plan Section 1.4 and the amount of claims set forth in Plan Section 1.5, the Debtor's Plan passes the Liquidation Test.

| VALUE OF CHAPTER 7 ESTATE (NET OF SECURED CLAIMS AND EXEMPTIONS) |
|---|

Value of Estate's Interests in Assets                                                              $0.00[4]

---

[4] *This number should be the same as the Total Value of the Estate's Interest in Assets listed in Section 1.4 of the*

**Minus**
- Estimated Chapter 7 expenses (calc. at 8% of the Total Value All Assets): -$66,653.11
- Amount of Administrative Claims  -$29,000.00
- Amount of Priority Tax Claims (disputed)  -$3,544,515.51
- Amount of Priority Unsecured Claims  -$0.00

**TOTAL Available For General Unsecured Claims in a Chapter 7 Liquidation**  **$0.00**

| AMOUNT OF GENERAL UNSECURED CLAIMS IN A CHAPTER 7 LIQUIDATION |
|---|

Class 4 General Unsecured Claims Amount  $1,171,652.00

**Plus**
- Undersecured portion of Secured Claims added to General Unsecured Claims due to Liquidation  $2,721,783.70

**TOTAL Amount of General Unsecured Claims in a Chapter 7 liquidation**  **$3,893,435.70**

**Percentage Distribution to Holders of General Unsecured Claims in a Chapter 7 Liquidation**  **0%[5]**

    The Plan passes the Liquidation Test because the percentage distribution to holders of General Unsecured Claims under the Plan is projected to be 5% whereas such Creditors are projected to receive 0% in a hypothetical chapter 7 liquidation.

## ARTICLE 5

## DISCHARGE

5.1    **Discharge.** On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

    OR, alternatively:

---

*Plan*
[5] *Divide Total Amount of General Unsecured Claims in the hypothetical liquidation by the total amount available to pay General Unsecured Claims in a hypothetical liquidation*

As soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in §1141(d)(1)(A) of this title, and all other debts allowed under §503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in §523(a) of this title.

## ARTICLE 6

## GENERAL PROVISIONS

### 6.1    Title to Assets

If the Plan is confirmed under §1191(a), except as otherwise provided in the Plan or in the Confirmation Order, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after Plan Confirmation, the property dealt with by the Plan is free and clear of all Claims and Equity Interests.

### 6.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4    Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under §1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims  objections, and issues arising from the assumption/rejection of executory

contracts or unexpired leases; (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; and (vi) to direct the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the Plan.

**6.5**    **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6**    **Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to §1193(a). However, the Bankruptcy Court may require additional items including re-voting on the Plan.

If the Plan is confirmed under §1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under §1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7**    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## DEFINITIONS

The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. Where applicable, the definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

7.1     **Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under §507(a)(2) of the Bankruptcy Code and allowed under §503(b) of the Bankruptcy Code.

7.2     **Allowed:** With respect to a Claim or Equity Interest means any claim against or equity interest in the Debtor pursuant to §502 of the Bankruptcy Code to the extent that: (a) the Debtor schedules such Claim as an undisputed, non-contingent and liquidated Claim, or (b) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and, as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

7.3     **Avoidance Actions**:  All causes of actions, suits, choses in action, and claims of the Debtor and/or the Debtor's estate against any entity or person seeking to avoid a transfer of property, recovery of property and subordination or other actions or remedies that may be brought on behalf of the Debtor or the Debtor's estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

7.4     **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

7.5     **Bankruptcy Court:** The United States Bankruptcy Court for the Western District of Pennsylvania.

7.6     **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

7.7     **Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

7.8     **Chapter 11 Case**: This case under Chapter 11 of the Bankruptcy Code in which Magna Service Agency, Inc. is the Debtor-in-Possession.

7.9     **Claim**: Any claim as defined in §101(5) of the Bankruptcy Code.

7.10    **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

7.11    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

7.12    **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and

is no longer in effect.

**7.13**    **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**7.14**    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**7.15**    **Debtor**: Magna Service Agency, Inc. the debtor-in-possession in this Chapter 11 Case.

**7.16**    **Disputed Claim:** Any claim against the Debtor pursuant to §502 of the Bankruptcy Code that the Debtor or any party in interest has in any way objected to, challenged or otherwise disputed.

**7.17**    **Effective Date**: The date on which the Plan shall become effective, which is 30 days after plan confirmation.

**7.18**    **Equity Interest**: An ownership interest in the Debtor.

**7.19**    **Executory Contracts**: All unexpired leases and executory contracts as described in §365 of the Bankruptcy Code.

**7.20**    **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**7.21**    **General Unsecured Claim**: Any Claim in the Chapter 11 case which is not a Secured Claim, Priority Tax Claim, or Priority Unsecured Claim.

**7.22**    **Insider:** The relationship between the Debtor and other persons defined at §101(31) of the Bankruptcy Code.

**7.23**    **Petition Date**: February 9, 2024, the date the Chapter 11 petition for relief was filed.

**7.24**    **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**7.25**    **Post-Confirmation Order**:  The Post-Confirmation Order and Notice of Deadlines entered by the Bankruptcy Court following Plan Confirmation providing, among other things, the deadlines by which certain post-Confirmation actions must be taken.

**7.26**    **Priority Unsecured Claim**: Any Claim entitled to priority in payment under §507(a)(1),

(4), (5), (6), and (7) of the Bankruptcy Code.

**7.27**    **Priority Tax Claim**: Any Claim entitled to priority in payment under §507(a)(8) of the Bankruptcy Code.

**7.28**    **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**7.29**    **Secured Claim:** A Claim that is secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code.

**7.30**    **Trustee**:  William G. Krieger, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**7.31**    **Value of the Estate's Interest in Assets**:  As to any asset of the Debtor, the value of the estate's interest in an asset is calculated by subtracting from the Liquidation Value listed for the asset in Plan Section 1.4: (a) the amount of the Allowed Secured Claims having a security interest in the asset; and (b) the amount of any claimed exemption applicable to the asset.  The Value of the Estate's Interest is calculated for purposes of the Liquidation Test in Article 4 of this Plan, only, and for no other purpose.

 

**DATED:** <u>May 9, 2024</u>

Respectfully submitted,
<u>  s/ Corey J. Sacca      </u>
Corey J. Sacca, Esquire
PA ID 306741
Bononi & Company, P.C.
20 North Pennsylvania Ave.
Greensburg, PA 15601
724-832-2499
csacca@bononilaw.com

# ARTICLE 8

## <u>EXHIBITS, SCHEDULES AND CHARTS</u>

The following checked documents either accompany the Plan or are included within the Plan

| | | |
|---|---|---|
| [X ] | Debtor's Assets at Fair Market Value | Article 1, Section 1.4 |
| [X ] | Debtor's Liabilities, listed by Class | Article 1, Section 1.5; *see also* Article 2, Sections 2.1 and 2.2 |
| [X ] | Executory Contracts and Unexpired Leases to be Assumed | Schedule 2.4(a) |
| [ ] | Executory Contracts and Unexpired Leases to be Assumed and Assigned | Schedule 2.4(b) |
| [ ] | Executory Contracts and Unexpired Leases to be Rejected | Schedule 2.4(c) |
| [X ] | Sources and Uses of Cash to Fund the Plan | Article 3.1 and Schedule 3.1 |
| [X ] | Financial forecast for the Debtor | Article 3.2 and Schedule 3.2 |
| [X ] | Liquidation Analysis | Article 4 |

**SCHEDULE 2.4(a)**

**Executory Contracts and Unexpired Leases to be Assumed**

| Counterparty Name & Address | Contract or Lease Description | Termination Date | Cure Amount[6] |
|---|---|---|---|
| Southpointe Land, LP | Commercial Lease<br>141 South Pointe Drive<br>Bridgeville, PA 15017 | September 2026 | $16,859.31 On Petition Date |
| | | | |

---

[6] *If the contract or lease is current and there is nothing outstanding then indicate the cure amount is $0.00.*

**SCHEDULE 3.1**

**Sources and Uses of Cash to Fund the Plan**

The sources and Uses of the Cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| Current Bank Account Balance: | <u>$142,342.84</u> |
| **Plus** | |
| Additional Cash Debtor anticipates will accumulate from net earnings between now and Effective Date[7] | <u>$0.00</u> |
| Borrowing[8] | <u>$0.00</u> |
| Capital Contributions | <u>$0.00</u> |
| Other (explain): | <u>$0.00</u> |
| **Cash on hand on the Effective Date:** | **$142,342.84** |
| **Less** | |
| Administrative Claims paid on Effective Date | $29,000.00 |
| Statutory costs and charges, including U.S. Trustee Fees | <u>$0.00</u> |
| Cure Amounts | <u>$0.00</u> |
| Other Payments Due on the Effective Date | $0.00 |
| **Balance after paying these amounts** | **$113,342.84** |

---

[7] The basis for these projections is set forth in Article 3 of the Plan and Schedule 3.2.
[8] Details concerning any Borrowings used to the fund the Plan are set forth in Article 2, Section 2.5.

|  | Projected Monthly Avg. |
|---|---|
| Revenue | 559,636 |
|  |  |
| Labor (Pilots) | 259,139 |
|  |  |
| Funds after Pilot Labor | 300,497 |
|  |  |
| Management Salaries | 46,013 |
| 1st insurance-P Liab-2157 | 21,905 |
| UPMC Work partners | 6,758 |
| Advanticom | 1,909 |
| AT&T Wireless | 5,816 |
| BBL Leasing |  |
| Cincinnati Insurance |  |
| Express 4X4 (Truck Leases) | 35,000 |
| GPS Insight | 5,299 |
| Highmark - Vision |  |
| UPMC Empl Benefit -- pilots | 8,446 |
| UPMC  Empl Benefit--mgmt | 8,424 |
| Muni Auth Twp of SF | 54 |
| Legal Counsel and Costs | 2,000 |
| Ohio Workers Comp | 75 |
| Pa American Water | 100 |
| Principal | 1,966 |
| Quadient-Postage | 50 |
| Quadient-Leasing | 68 |
| Republic Services | 90 |
| Southpointe Landtrust (Rent) | 11,755 |
| Selective Insurance | 13,009 |
| Union Leasing (fuel and tolls) | 40,500 |
| United Concordia | 3,268 |
| West Penn Pwer-680699 | 1,500 |
| West Penn Pwer-686902 | 200 |
|  | 214,204 |
|  |  |
| Income After Operating Expenses | 86,294 |
|  |  |
|  |  |
| **Monthly Payments Under Plan** |  |
|  |  |
| First National Bank | 4,216 |
| Huntington National Bank | 9,525 |
| Internal Revenue Service | 58,846 |
| Commonwealth of PA LI | 6,569 |
| Southwest Tax Collection | 3,273 |
| Ohio Department of Taxation | 71 |
| General Unsecured | 1,000 |
|  |  |
|  |  |
| Total Montly Plan Payments | 83,500 |

Schedule 3.2
Finacial Projections

*Projection shows monthly
estimated expenses over the plan
term.

**Monthly average determined
from yearly gross revenue and
expense projections of Debtor.